NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  07a0774n.06
Filed:  November 1, 2007

No. 05-5567

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Alan Wilkins, | ) | |
| | ) | |
| Defendant-Appellant.) | | |

BEFORE: MOORE and GRIFFIN, Circuit Judges, and GRAHAM,[*] District
Judge.

GRAHAM, District Judge.  Defendant-appellant Alan Wilkins was
indicted in the Western District of Tennessee on drug and weapons
charges.  In an indictment filed on July 30, 2003, defendant was
charged in Count 1 with being a felon in possession of a firearm in
violation of 18 U.S.C. § 922(g), in Count 2 with possession of a
firearm in furtherance of a drug trafficking crime violation of 18
U.S.C. § 924(c), and in Count 3 with possession with the intent to
distribute marijuana in violation of 21 U.S.C. § 841(a)(1).  These
offenses were alleged to have occurred on January 1, 2003.
Defendant was also charged with two offenses allegedly committed on
April 3, 2003.  Specifically, defendant was charged in Count 4 with
being a felon in possession of a firearm in violation of 18 U.S.C.
§ 922(g), and in Count 5 with being a felon in possession of six
rounds of ammunition in violation of 18 U.S.C. § 922(g).

On May 12, 2004, defendant filed a motion to sever Counts 1,

_____

[*]The Honorable James L. Graham, Senior United States District Judge for the
Southern District of Ohio, sitting by designation.

2 and 3 from Counts 4 and 5 for purposes of trial. The motion was referred to a magistrate judge for a ruling. In a decision filed on June 8, 2004, the magistrate judge denied the motion for severance. The magistrate judge concluded that all counts were properly joined in the same indictment under Fed.R.Crim.P. 8(a) and that severance of the counts was not warranted under Fed.R.Crim.P. 14(a). Defendant filed an objection to the decision of the magistrate judge, but the record does not show that the district court specifically ruled on this objection. A trial on all counts of the indictment commenced on December 6, 2004, and the defendant did not renew his request for severance at any time during the trial.

The testimony presented at trial revealed that on January 1, 2003, Officer Joseph Cunningham of the Memphis, Tennessee, Police Department was on routine patrol when he observed a white Chevy van stopped in the middle of eastbound traffic on Brooks Road. The driver appeared to be trying to talk to a pedestrian on the south side of the street through the passenger window of the vehicle. JA 59. Officer Cunningham stopped the van. He checked the vehicle registration and learned that the license plates on the van were registered to another vehicle. JA 60. He approached the driver's window, while Officer Shane Jordan approached the van's passenger window. JA 60; 76.

Officer Cunningham questioned the driver of the van, identified as the defendant, and learned that defendant did not have a valid driver's license. JA 61. Defendant was arrested and placed in the back seat of Officer Cunningham's squad car. JA 61. Officer Cunningham testified that defendant admitted to having a

2

gun in the van, and that defendant consented to the search of the vehicle. JA 62. During the search, the officers recovered a nine-millimeter pistol from the center console of the van. They also found spent rounds on the floor board by the driver's seat, and 1.7 pounds of marijuana, packaged in two large freezer bags, located between the second and third rows of seats. JA 64-65; 78-79; 82; 195.

The evidence at trial further revealed that on April 3, 2003, Memphis police officers responded to a 911 emergency call made by defendant's wife, Lisa Wilkins. Mrs. Wilkins told Officer Erskin Caldwell that defendant had shot the tires of her vehicle. JA 131. The officers observed a vehicle with three flat tires, and recovered six .45 caliber shell casings from the ground around the vehicle. JA 132. The defendant then arrived at the scene and stated, "The bitch knocked on my door and I shot her tires out because every time the police are called, she is not here." JA 133-34; 147. Defendant also told the officers that the gun was located on the top shelf of a bedroom closet in an apartment located at 3496 Mediterranean, where he sometimes stayed with his girlfriend, Jolene Helm, when estranged from his wife. JA 134-36, 248. The police went to the apartment and were admitted by a woman who showed them the location of the pistol. JA 143-44. The officers retrieved a .45 caliber Llama-Max-1 handgun, magazine clip and holster from a closet in the apartment. JA 134-36; 140.

As part of its case in chief, the government called Officer Moore, the supervisor of the Communications Bureau of the Memphis Police Department, to authenticate the audio tape of the 911 call made by Lisa Wilkins. JA 125.

3

The government also presented the testimony of Brian Weaks, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. Agent Weaks testified that while serving a grand jury subpoena on Helm, he left business cards in the neighborhood asking anyone with information concerning Helm's whereabouts to contact him. JA 208-09. Agent Weaks testified that he received a message that someone identifying himself as Alan Wilkins had called and stated that someone was looking for his girlfriend. JA 209. Agent Weaks called the phone number provided and explained that he had a grand jury subpoena to serve on Ms. Helm. The man then asked, "Is this about when I shot all those tires out?" JA 209.

Lisa Wilkins testified that she had no recollection of the shooting on April 3, 2003. JA 153. She agreed that prior to trial, she had informed the prosecutor that there was a ninety-nine percent chance that her voice was captured on the tape. However, she further testified at trial that although it was possible that the recorded voice was hers, it might not be. JA 170-71. Mrs. Wilkins also testified concerning her activities on January 1, 2003. She claimed that she purchased the firearm recovered from the van, that she placed the firearm in the van for her protection, and that she accidentally left the firearm in the vehicle when the van had ignition problems. JA 171-75.

Defendant stipulated to his felon status at trial and admitted the possession of marijuana charge. JA 56; 236-37; 276. He also testified that he recognized his wife's voice on the 911 tape. JA 268. He denied knowing that the nine-millimeter handgun was in the van prior to its discovery by the police. JA 237-39. He also denied having a weapon at the time his wife's tires were shot on

4

April 3, 2003, and stated that his son had a gun.  JA 250.

The jury returned a verdict of guilty on all counts.  The district court imposed a sentence of seventy months on Count 1, sixty months on Count 3, and seventy-one months on Counts 4 and 5, to run concurrently, and a sentence of sixty months on Count 2, to run consecutively to the other counts, resulting in a total sentence of one hundred and thirty-one months.  Defendant now pursues the instant appeal.

I.

Defendant first argues that Counts 1, 2 and 3 were not properly joined in the same indictment with Counts 4 and 5, thereby violating Fed.R.Crim.P. 8(a).  That rule provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged–whether felonies or misdemeanors or both–are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Rule 8(a).  This court has held that Rule 8(a) should be construed in favor of joinder, although the failure to meet the requirements of the rule constitutes misjoinder as a matter of law.  United States v. Chavis, 296 F.3d 450, 456 (6th Cir. 2002).  "Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment."  Id.

Defendant correctly argues that the offenses in Counts 1 through 3, allegedly committed on January 1, 2003, were not a part of the same act or transaction as the offenses in Counts 4 and 5 which were allegedly committed on April 3, 2003.  There is also no language in the indictment which indicates that the offenses committed on January 1, 2003, were "connected with or constitute

5

parts of a common scheme or plan." Rule 8(a). However, Counts 1, 4 and 5 are offenses "of the same or similar character[.]" Rule 8(a). Both Count 1 and Count 4 charged the defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and Count 5 charged the defendant with being a felon in possession of six rounds of ammunition in violation of 18 U.S.C. § 922(g). We therefore conclude that the joinder of Counts 4 and 5 with Count 1 in the same indictment was proper. Counts 2 and 3 were a part of the same act or transaction as Count 1, and thus those counts were also properly joined in the same indictment with Counts 1, 4 and 5.

Defendant also argues that the district court should have severed Counts 1, 2 and 3 from Counts 4 and 5 for a separate trial pursuant to Fed.R.Crim.P. 14. Rule 14 permits a defendant to move for severance in situations in which joinder of multiple offenses, although proper under Rule 8, would be prejudicial to the defendant. Zafiro v. United States, 506 U.S. 534, 538 (1993). However, a Rule 14 motion must be renewed at the close of the evidence or it is waived. United States v. Harris, 293 F.3d 970, 975 (6th Cir. 2002)(citing United States v. Hudson, 53 F.3d 744, 747 (6th Cir. 1995)). Since defendant did not renew his motion for severance at the close of evidence, we find that the defendant has failed to preserve this issue for appeal.

## II.

Defendant's next claim of error challenges the decision of the district court to permit the government to play the tape of Mrs. Wilkins' 911 call relating to the April 3, 2003, offenses during the testimony of Officer Moore, who was called as a witness to

6

authenticate the tape. After the tape was played, defense counsel moved to strike the tape on the basis that it contained unsworn statements. JA 125. Counsel also argued that the statements on the tape might be inconsistent with Mrs. Wilkins' testimony, thereby confusing to the jury, but he conceded that the tape might be admissible to impeach Mrs. Wilkins after she testified. JA 125-26. The trial court permitted the tape to be played on the grounds that it constituted self-authenticating evidence of the call. JA 126. The government later called Mrs. Wilkins as a witness, and during her direct examination, the trial court granted the government's request to question her as a hostile witness. JA 164. The 911 tape was played during her testimony, and she was questioned as to whether it was her voice on the tape. JA 165-71. She testified that it was possible that her voice was on the tape, but that it might be or might not be, despite her earlier statement to counsel on Friday of the previous week that she was ninety-nine percent sure that the voice was hers. JA 164, 171. Defense counsel did not object to the playing of the tape during Mrs. Wilkins' testimony, and defendant does not contend that the playing of the tape during her testimony was error. Rather, he argues that he was prejudiced by the earlier playing of the tape, which resulted in the jury hearing the tape twice.

This court reviews the district court's evidentiary rulings for abuse of discretion. United States v. Henley, 360 F.3d 509, 518 (6th Cir. 2004). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. However, the district court has broad discretion in balancing probative value against potential

7

prejudicial impact. United States v. Layne, 192 F.3d 556, 573 (6th Cir. 1999). Even when there is an abuse of discretion, that error is harmless "unless it is more probable than not that the error materially affected the verdict." United States v. Martin, 897 F.2d 1368, 1372 (6th Cir. 1990).

Playing the tape permitted Officer Moore to verify that this particular call had been made and was in fact received by the Communications Bureau at the date and time in question. The playing of the tape also provided background information as to why Officer Caldwell was dispatched to the scene. The tape contained relevant and probative evidence. See United States v. Lloyd, 462 F.3d 510, 516 (6th Cir. 2006)(911 tape of statements by bank employees concerning the robber was relevant and probative evidence.) Although defense counsel argued before the trial court that the tape contained unsworn statements, he describes Mrs. Wilkins' statements as being "hysterical, frantic and desperate." Defendant's Brief, p. 14. Thus, the statements arguably fell within the hearsay exception for excited utterances under Fed.R.Crim.P. 803(2), and were admissible as evidence.

Defense counsel argued below that the government was attempting to impeach Mrs. Wilkins before she testified. However, there is no evidence that the prosecutor knew prior to Mrs. Wilkins' testimony at trial that she would refuse to admit to making the statements on the tape, particularly since she basically told him the Friday before trial that the voice on the tape was hers. The tape contained relevant evidence independent of any impeachment value, and it did not become impeaching evidence until after Mrs. Wilkins testified. The playing of the tape was a valid

8

means of assisting the jury in determining whether Mrs. Wilkins in fact made the 911 call. Although defendant speculates that the fact that the jury heard the tape twice had an impact on the jury's weighing of Mrs. Wilkins' credibility, there is no reason to conclude that playing the tape twice caused the jurors to discredit her testimony any more than they would have if they had only heard the tape once.

Defendant further contends that it was prejudicial for the jury to twice hear the "hysterical, frantic and desperate" voice on the tape. However, the presence of emotion in the voice on the tape was relevant to assist the jury in determining whether Mrs. Wilkins was telling the truth on the stand. The mere fact that the voice on the tape was hysterical is not sufficient to show unfair prejudice. See Lloyd, 462 F.3d at 517 (emotions of robbery victims evidenced in voices on tape insufficient to create danger of unfair prejudice).

Even assuming that there was any error in the first playing of the tape, that error was harmless. There was ample evidence to support defendant's conviction for his possession of a weapon and ammunition on April 3, 2003. Defendant himself admitted that the voice on the tape was that of his wife. JA 268. There is evidence that defendant told Officer Caldwell at the scene that "I shot her tires out because every time the police are called, she is not here." JA 133-34; 147. Agent Weaks testified that when he talked to an individual who identified himself as the defendant, the man asked, "Is this about when I shot all those tires out?" JA 209. Defendant has failed to show prejudice resulting from the playing of the 911 tape during Officer Moore's testimony, and this claim of

9

error is without merit.

### III.

Defendant also argues that the district court failed to give adequate instructions on how to consider the multiple counts alleged in the indictment. The record does not disclose any objection by defendant to the instructions given by the court. Where a defendant fails to object to the jury instructions at trial, we review for plain error only. United States v. Newsom, 452 F.3d 593, 605 (6th Cir. 2006); Fed.R.Crim.P. 30(d)("Failure to object [to jury instructions] in accordance with this rule precludes appellate review, except [for plain error] under Rule 52(b)."). "Plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." United States v. Combs, 33 F.3d 667, 669 (6th Cir. 1994)(quoting United States v. Piccolo, 723 F.2d 1234, 1241 (6th Cir. 1983)).

In reviewing for plain error, we must determine whether (1) there was an error in the district court, (2) the error is plain, (3) the plain error affected the defendant's substantial rights, and (4) such error seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Thomas, 11 F.3d 620, 629-30 (6th Cir. 1993).

In this case, the district court instructed the jury as follows:

> The defendant has been charged with five separate crimes. The number of charges is no evidence of guilt. It is your duty to separately consider the evidence that relates to each charge, and to return a separate verdict for each one. For each charge, you must decide whether the government has presented proof beyond a reasonable doubt that the defendant is guilty of that particular

10

charge.

Your decision on one charge, whether it is guilty or not guilty, should not influence your decision on any of the other charges.

JA 314-15. This instruction is almost identical to those upheld by this court in United States v. Cody, 498 F.3d 582 (6th Cir. 2007), and Chavez, 296 F.3d at 462, as being sufficient to caution the jurors concerning their consideration of multiple counts and to render harmless any error in the joinder of counts. The reasoning in Cody and Chavez is even more compelling in this case in light of our holding above that the counts in defendant's indictment were properly joined under Rule 8(a). We presume that the jury followed the trial court's instruction. Chavez, 296 F.3d at 462. This case involved only two incidents, the evidence presented was not complicated or confusing, and the jury was capable of considering each count separately in determining whether the government had met its burden or proof. No error, plain or otherwise, occurred in the district court's instructions to the jury concerning the manner of deliberation on multiple counts.

IV.

Prior to oral argument, the parties were given the opportunity to brief the issue, raised sua sponte by this court, of whether we should recognize plain error in the wording of Count 2 of the indictment and the jury instructions given by the district court on that count. Defendant raised no objection in the district court or on appeal concerning the wording of Count 2 or the jury instructions on that count. However, "this Court has discretion to correct plain errors affecting important rights of criminal defendants, even when not raised on appeal." United States v.

11

Graham, 275 F.3d 490, 521 (6th Cir. 2001). See also United States v. Pugh, 405 F.3d 390, 401-02 (6th Cir. 2005)(Fed.R.Crim.P. 52(b) permits a court of appeals, at its discretion, to address issues under plain error analysis sua sponte).

We find that the defendant waived any technical error in the indictment by failing to challenge the defect in a motion made before trial pursuant to Fed.R.Crim.P. 12(b)(3)(B). See United States v. Kakos, 483 F.3d 441, 444 (6th Cir. 2007). However, defendant's failure to object to the indictment does not preclude review by this court to ascertain whether any harm to defendant's substantive rights stemmed from an error in the indictment, such as harm caused by erroneous jury instructions. Id. at 444-45 (citing United States v. Adesida, 129 F.3d 846, 849 (6th Cir. 1997)). We conclude that it is appropriate to exercise our discretion to review the jury instructions on Count 2 of the indictment. Since defendant raised no objection to the court's charge on Count 2, his conviction on that count may be overturned only if there was plain error in the charge which affected his substantial rights. Lloyd, 462 F.3d at 514.

Count 2 purports to charge the defendant with an offense under 18 U.S.C. § 942(c)(1)(A). That section provides that "any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be subject to an additional consecutive term of incarceration. 18 U.S.C. § 924(c)(1)(A). This court held in United States v. Combs, 369 F.3d 925, 933 (6th Cir. 2004), that § 924(c)(1)(A) criminalizes two separate and distinct offenses: (1) using or carrying a firearm

12

during and in relation to any crime of violence or drug trafficking crime; and (2) possessing a firearm in furtherance of any such crime. The proofs required for each offense are distinct. Id. at 930-32.

For purposes of the use or carry offense, the "use" of a firearm connotes more than mere possession of the firearm, and requires some active employment of the firearm by the person committing the drug offense. Combs, 369 F.3d at 932. The term "carry" means that the firearm must be on the person or accompanying the person, such as conveying the firearm in a motor vehicle. Id. To "carry" a firearm, the defendant must physically transport the firearm, but the firearm need not be immediately available for use. Id. at 933. The "during and in relation to" element requires that the firearm "furthered the purpose or effect of the crime and that its presence or involvement was not the result of coincidence." United States v. Warwick, 167 F.3d 965, 971 (6th Cir. 1999).

In contrast, the "in furtherance of" element of the possession offense requires a higher standard of participation by the defendant than the "during and in relation to" element of the use or carry offense. United States v. Mackey, 265 F.3d 457, 461 (6th Cir. 2001). The government must show that the firearm was possessed to advance or promote the commission of the underlying drug trafficking offense, and that there was "a specific nexus between the gun and the crime charged." Id. at 462. The possession charge does not require that the defendant actively employ or physically transport the firearm; rather, it is sufficient if the firearm is strategically located for quick and

13

ease of use.  Id.

Count 2 reads as follows:

> On or about January 1, 2003, in the Western District of Tennessee, the defendant, ALAN WILKINS[,] during, in relation to and in furtherance of a drug trafficking crime, did unlawfully, knowingly and intentionally possess a firearm, to wit: an EAA (Tanfoglio) model: Witness, 9mm pistol, in violation of Title 18, United States Code, Section 924(c).

Count 2 contains all of the elements of the possession offense, but also includes the language "during, in relation to" applicable to the use or carry offense.  Count 2 is sufficient to charge a possession offense.  See United States v. Cobbs, 233 Fed.App'x 524, 532-33 (6th Cir. 2007).  However, since that count contains no allegations that the defendant used or carried a firearm, Count 2 does not charge a use or carry offense under § 924(c), and the language "during, in relation to" is potentially confusing surplusage.

When a count charging one type of offense under § 924(c)(1)(A) also contains some or all of the elements of the other type of offense under § 924(c), a danger arises that the jury will convict the defendant on an offense not charged in the indictment, or that the jury may reach a non-unanimous decision.  See United States v. Savoires, 430 F.3d 376, 380 (6th Cir. 2005); Combs, 369 F.3d at 934-36.  When a § 924(c) count contains language relating to more than one offense, jury instructions can alleviate any prejudice to the defendant.  See Cobbs, 233 Fed.App'x at 533 (affirming conviction on possession charge where surplus "during and in relation to" language in the indictment was not included in the jury instructions and the trial court instructed solely on the possession offense); Lloyd, 462 F.3d at 514 (noting that "proper

14

jury instructions can mitigate the risk of jury confusion[.]");
United States v. Davis, 306 F.3d 398, 416 (6th Cir. 2002)(no
prejudice where jury instructions only charged on use and carry
offense).    Thus, we must examine the charge in this case to
determine if plain error occurred.

In instructing the jury, the district court read Count 2 as it
was written in the indictment to the jury.  Tr. 19-20.  The court
later stated, "In Count 2, the defendant is charged with possession
of a firearm in furtherance of a drug trafficking crime."  Tr. 27.
However, when instructing the jury on the applicable statute, the
court read only the part of the statute relevant to the use and
carry offense, stating, "Any person who, during and in relation to
any crime of violence or drug trafficking crime for which the
person may be prosecuted in a court of the United States, uses or
carries a firearm, shall be guilty of a crime."    Tr. 27.
Compounding this error, the district court then stated, "Under
Count 2, the defendant is charged with using or carrying a firearm
during the commission of the drug trafficking crime which is
charged in Count 3."  Tr. 27.

The district court also referred to both § 924 offenses in
defining the elements of Count 2.  The court described the second
element as being "that the defendant knowingly carried a firearm
during and in relation to the commission of, or knowingly possessed
a firearm in the furtherance of, the crime charged in Count 2."
Tr. 28.  The court then stated, "The second element the government
must prove beyond a reasonable doubt is that the defendant
knowingly possessed a firearm in furtherance of the commission of
the crime charged in Count 3."  Tr. 28.  The court then proceeded

15

to define the terms "possession" and "possess a firearm in furtherance of the crime." Tr. 29. Thus, the instructions mixed the elements of the use or carry offense with those of the possession offense. This constituted error, as well as plain error. See Savoires, 430 F.3d at 381.

The government argues that the error was not prejudicial, noting that the district court did give a correct charge on the elements of the possession offense, and did not specifically define the elements "use," "carry," or "during or in relation to." However, the fact that the charge included a correct definition of the possession offense does not alter the fact that it also contained extraneous and contradictory language relating to the use or carry offense. Further, the fact that the court did not specifically define the terms "use," "carry," or "during or in relation to" actually heightened rather than diminished the risk of prejudice. Those terms have specific meanings in the context of a § 924(c) offense, and the failure to define those terms makes it more likely that the jurors simply used the common, everyday meaning of those terms in considering the evidence rather than their more specific meanings. In addition, the facts of this case are such that the jury could have found that the defendant carried a firearm during and in relation to his marijuana offense while concluding that the government had failed to meet the higher standard of possessing the firearm "in furtherance of" that drug offense.

Since the court's instructions mixed the elements of the two offenses and potentially authorized a conviction for an offense which was not charged in the indictment, the error affected

16

defendant's substantial rights. See Savoires, 430 F.3d at 380-81 (instructions on possession charge which included elements of use offense authorized conviction for non-existent offense); Combs, 369 F.3d at 935-36 (intermixing elements of both offenses created risk that defendant was ultimately convicted for use offense instead of possession offense for which he was indicted). This error undermined the fairness of defendant's trial, see Savoires, 430 F.3d at 381, and affected the integrity of the judicial proceedings. United States v. Lowe, 172 Fed.App'x 91, 96-7 (6th Cir. 2006). Defendant's conviction on Count 2 resulted in the addition of sixty months to his total sentence of incarceration. We conclude that plain error occurred in the court's charge on Count 2, and that defendant's conviction on Count 2 must be reversed.

V.

For the foregoing reasons, we affirm defendant's convictions on Counts 1, 3, 4, and 5 of the indictment. We reverse the defendant's conviction on Count 2, and remand this case to the district court for further proceedings consistent with this opinion.

17