BERNICE BOUIE DONALD,
concurring in part and dissenting in part.
I concur in the majority’s decision to affirm the district court’s judgment with respect to the jury instruction and Sara Hatton’s cooperation. However, I dissent with respect to the majority’s conclusion that the robbery charges were not mis-joined and that any error was harmless.
I.
The majority concludes that joinder of the two robberies was proper because the indictment demonstrates that the robberies were “of the same or similar charac *583 ter.” See Fed.R.Crim.P. 8(a). Our Court has not extensively discussed what it means to be “of the same or similar character.” While proselytizing that a reviewing court must only analyze the face of an indictment, see United States v. Chavis, 296 F.3d 450, 456 (6th Cir.2002), we have often considered far more than the words contained between its four corners. See United States v. Cobb, 397 Fed.Appx. 128, 136 (6th Cir.2010) (finding that a Hobbs Act robbery and two armed bank robberies were of similar character based on the revelation at trial of a similar modus oper-andi); United States v. Deitz, 577 F.3d 672, 692-93 (6th Cir.2009) (reviewing whether the defendant affirmatively conveyed his withdrawal of a conspiracy such that the conspiracy charge was misjoined); United States v. Wilkins, 253 Fed.Appx. 538, 541 (6th Cir.2007) (noting that both charges were pursuant to 18 U.S.C. § 922(g) and thus were properly joined); United States v. Tran, 433 F.3d 472, 477-78 (6th Cir.2006) (concluding that two arson charges were of similar character because the modes of operation were similar; they involved overlapping evidence and witnesses; and the fires were within seven miles of each other and targeted buildings owned by the same individual); United States v. Bibby, 752 F.2d 1116, 1121 (6th Cir.1985) (determining that tax counts were not of the same or similar character because the underlying conduct regarding each count was unrelated); United States v. Rox, 692 F.2d 453, 454 (6th Cir.1982) (finding that the charges were of the same or similar character because they arose from the defendant’s decision to abuse her official state position to circumvent immigration laws).
"What this Court says in theory does not translate to what it does in practice — and for good reason. The joinder of “similar but unrelated charges can create[ ] a heightened risk to the defense by making it more difficult for a defendant to testify on his own behalf for one charge but not for another, by permitting the jury to hear evidence that would be inadmissible in. separate trials, and by creating a risk that the jury will use the evidence of separate crimes cumulatively.” 1A Charles Alan Wright, Federal Practice & Procedure § 143 (4th Ed.2015), Furthermore, as the Ninth Circuit explains, “[depending on the level of abstraction (e.g., offenses involving dishonesty, offenses involving an intent to defraud), offenses of a ‘like class’ might encompass a host of otherwise unrelated offenses, making an ‘uncomplicated’ similar character inquiry tantamount to no meaningful inquiry.” United States v. Jawara, 474 F.3d 565, 577-78 (9th Cir.2006). But see United States v. Coleman, 22 F.3d 126, 133 (7th Cir.1994) (concluding that “Rule 8(a) is a rather clear directive to compare the offenses charged for categorical, not evidentiary, similarities” and that a Federal Rule of Criminal Procedure 14 motion ameliorates any unfairness or prejudice as a result of joining same or similar charges).
Other circuits explicitly consider appropriate, limited factors that can be inferred from the face of an indictment. See, e.g., Jawara, 474 F.3d at 577 (reviewing “temporal proximity, physical location, modes of operation, identity of the victims, likelihood of evidentiary overlap, and the like, to the extent that they can be gleaned from the indictment”); United States v. Edgar, 82 F.3d 499, 503 (1st Cir.1996) (listing various considerations such . as “whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame In which the charged conduct occurred” (quoting United States v. Taylor, 54 F.3d 967, 973 (1st Cir.1995))). I would adopt such an approach, as it is consistent with our precedent.
*584 II.
Whether reviewing only the indictment or also considering broader factors, I would find that the robberies in this case were misjoined. Staying true to this Court’s articulated standard, I start with the face of the indictment. The majority relies on this Court’s decision in Cobb to demonstrate that the elements of a Hobbs Act robbery and a bank robbery are “of the same or similar character” within the meaning of Rule 8. However, Cobb itself does not rely on similarities in the indictment. See 397 Fed.Appx. at 136. Instead, it concludes that the robberies were of similar character based on the robberies’ mode of operation, which was not in the indictment: it was revealed at trial. See id.
Regardless, I do not believe that compelling similarities between the two robberies can be gleaned from the indictment in this case. The indictment alleges that the Your Community Bank robbery involved other individuals — namely, Wojcie-chowski, Ridge, and Ewing. It contends that Hatton and Wojciechowski concealed their identities, brandished firearms, and ordered bank employees to give them money. Finally, it claims thát Hatton and Wojciechowski left the bank, where Ridge was waiting with a vehicle to whisk them away from the crime scene and elude police detection. Regarding the Smoke Shop robbery, the indictment alleges that Hat-ton interfered with commerce and interfered with the movement of articles in commerce by unlawfully taking money from a person with a threat of violence. It does not allege that there were any accomplices. It also does not allege that Hatton attempted to conceal his identity or that he had a getaway driver. Furthermore, the original conspiracy count explains that Hatton “was unable to participate [in a subsequent bank robbery tied to the conspiracy] after he was arrested for a robbery that occurred on October 26, 2011.” R. 41, PagelD # 99. Importantly, it does not indicate that the Smoke Shop robbery was related to the conspiracy to rob banks. Accordingly, I would find the differences between each count in the indictment material, such that the Smoke Shop robbery and the Your Community Bank robbery were misjoined.
Additionally, if I am true to our precedent and review other factors that can be gleaned from the indictment, I would also conclude that these robberies were mis-joined. Unlike in Cobb, the robberies here did not share the same modus operandi. See Cobb, 397 Fed.Appx. at 136 (concluding that joinder of a bank robbery and a Hobbs Act robbery was proper because the modus operandi — where the defendant approached a female, threatened a murder/suicide if she did not cooperate, and wore the same or similar clothing — was the same or similar within the meaning of Rule 8(a)). The Your Community Bank robbery involved a getaway driver; an accomplice; ski masks; inside knowledge of dye packs, bait bills, and silent alarms; reconnaissance of the bank to ensure that no customers were present; and a premeditated plan to raid the vault once inside. The bank employees noted that the robbers did not threaten them and spoke little. This painstakingly planned and executed robbery stands in stark contrast to what occurred at the Smoke Shop, which was a simple grab-and-go operation. While robbing the Smoke Shop, Hatton wore a hoodie and sunglasses, had to wait until a customer left, and threatened the owner with violence. There was no allegation of accomplices, getaway drivers, masks, or a plan of any kind.
The case before us is therefore most similar to Bibby, which is in accord with the Ninth Circuit’s concerns about joining *585 otherwise unrelated offenses. See Jawara, 474 F.3d at 577-78. In Bibby, this Court found misjoinder when an indictment charged multiple tax fraud counts against a defendant. 752 F.2d at 1121. Count 17 referred to the defendant’s failure to report a kickback as income on his taxes. Id. Counts 18 through 20 alleged “only that [the defendant] claimed excessive deductions for attorney’s fees on his 1977, 1979, and 1980 tax returns.” Id. The Bibby Court noted that “[t]he fraudulent deduction of attorney’s fees had absolutely nothing to do with the defendants’ overall scheme to defraud.” Id. Even though the counts were of a similar character, this Court concluded that Counts 18 through 20 were misjoined because the underlying conduct for those counts was unrelated to the underlying conduct for Count 17. Id. I would apply the same reasoning here: even though the counts are “of the same or similar character” in that both are robberies, they are nevertheless misjoined because the robberies themselves are not related per the face of the indictment.
Furthermore, none of our other considerations for misjoinder are present here. There were no common victims, see Tran, 433 F.3d at 477-78; there was no likelihood of evidentiary overlap, see Deitz, 577 F.3d at 692-93, Tran, 433 F.3d at 477-78; there was only one similar witness who testified briefly to a few facts and explained that he did not investigate the Smoke Shop robbery, see Tran, 433 F.3d at 477-78; and finally, these charges did not fall under the same statute, see Wilkins, 253 Fed.Appx. at 541.
In sum, I would conclude that judicial economy — the driving force behind join-der — was not furthered in this case. See United States v. Richardson, 161 F.3d 728, 734 (D.C.Cir.1998). These robberies, therefore, were misjoined.
III.
The majority also concludes that Hatton has not demonstrated prejudice in this case and that any error was harmless. I disagree.
A. Substantial evidence
I believe that the record does not contain substantial evidence of Hatton’s guilt in relation to the Your Community Bank robbery.[1] The government argues that three key pieces of evidence demonstrate Hatton’s guilt: (1) Ridge’s and Wojciechowski’s testimony; (2) Sara Hatton’s advice on how to rob a bank undetected; and (3) the similarity between the male robber’s physical characteristics and Hatton’s physical characteristics. On the other hand, the defense argues that it was Ridge who robbed the bank with Wojciechowski, not Hatton.
First, Wojciechowski and Ridge testified that Hatton was an accomplice to the Your Community Bank robbery as part of their plea deal for reduced sentences. They changed their stories as time went on. Wojciechowski suggested that Hatton was involved when she was first arrested, but she denied that Sara Hatton and Ridge were also involved. She eventually changed her story before she testified before- the grand jury. Likewise, Ridge denied his involvement when he was first arrested, but he changed his story to match Wojeiechowski’s before he testified before the grand jury. Accordingly, a jury *586 might not view these individuals as the most trustworthy sources of information about what occurred during the Your Community Bank robbery.
Ridge’s testimony also reveals a major inconsistency. He stressed that semi-automatic pistols were used during the Your Community Bank robbery. Detective Jim Clark testified that the male robber used a revolver. Wojciechowski was never asked what type of gun was used. This inconsistency is crucial because the police found a revolver at Wojciechowski and Ridge’s home. Thus, Ridge had access to the same type of gun used in the robbery, consistent with the defense’s theory that it was Ridge who robbed the bank with Wo-jciechowski.
Second, the government argues that Sara Hatton’s participation in the robbery was evidence of Hatton’s guilt. However, even assuming it is true that she imparted information about dye packs, bait bills, and silent alarms, her participation does not show that Hatton was the one who entered the bank. Moreover, Detective Clark testified that Sara Hatton called him to help him in his investigation of the Your Community Bank robbery — not Wojciechow-ski’s alleged drug trafficking scheme. In fact, Detective Clark’s testimony concerns only the Your Community. Bank robbery. To a jury, it might seem contradictory that Sara Hatton, who was attempting to help her husband receive a lower jail sentence for the Smoke Shop robbery, would assist the police in implicating her husband in the Your Community Bank robbery.
Lastly, the government believes that the male robber’s physical features match Hat-ton’s physical features. Testifying at trial, the three bank employees all generally described the same characteristics: a tall, Caucasian male with a slim build who was wearing work boots, jeans, gloves, a hooded sweatshirt, and a mask over his face. None of them could positively identify the perpetrator because of the mask that he wore, but they did notice various attributes. Alicia Shelman testified that he had blonde or red eyebrows. She also testified that she did not notice if the male robber had a limp or sway and stated that he moved fairly quickly. Dwayne Livers testified similarly. Amanda Hewlett, who let the male robber into the bank’s vault, noted that he seemed to sway when he walked, but that he did not have a limp. She also stated that he was not that quick.
The defense asked the jury to conclude that this male robber was Ridge and hot Hatton. It seems at least plausible. Ridge, who is Caucasian, testified that he is 5' 11" — not 5' 8" as the prosecutor asserted in his closing argument — and weighed about 150 pounds at the time of the robbery. Livers testified that he was 5' 10" and that the male perpetrator was taller than him. The record contains no evidence of Hatton’s height or build, although the jury did have an opportunity to view Hatton while he was standing. Furthermore, there was conflicting testimony about whether Hatton walks with a noticeable limp. In sum, both men were tall and had slender builds, in line with the bank employees’ descriptions.
Moreover, other evidence at trial does not distinguish Hatton as the robber. Ridge had a bank account at the Your Community Bank location that was robbed, while Hatton did not. Both Wo-jciechowski and Ridge spoke of using Hat-ton’s green Jeep Cherokee as the getaway car, but the prosecutor never demonstrated that Hatton owned a green Jeep Cherokee. The fingerprints and DNA recovered from the Your Community Bank robbery did not indicate who the perpetrator was. Finally, when Wojciechowski was first arrested, she told the police that Hatton took his share of money with him in the com *587 puter bag that the male robber had with him. However, when the police searched her and Ridge’s home, they found two computer bags similar to the ones used during the robbery.
Based on the foregoing, I do not believe that the government has demonstrated that there was substantial evidence at trial indicating that Hatton is guilty of the Your Community Bank robbery. The evidence shows that, like Hatton, Ridge had access to the type of gun used during the robbery and, like Hatton, knew how to avoid bank alarms courtesy of Sara Hatton’s knowledge. Both men have nearly the same physical characteristics. It seems particularly troubling to differentiate between Hatton and Ridge based on Hatton’s “at least blonde-looking eyebrows,” as the prosecutor described them. Lastly, other evidence at trial could point to either Ridge or Hatton, such as the computer bags found at Ridge’s home. Reviewing the record in its totality, it certainly does not seem that the government “overwhelmingly]” demonstrated Hatton’s guilt in relation to the Your Community Bank robbery. Lane, 474 U.S. at 449, 106 S.Ct. 725.
B. Limiting instructions
The district court gave limiting instructions to the jury, explaining that they must differentiate between the evidence for each robbery in their deliberations. The instructions stated that “the fact that the defendant has been charged with several crimes is no evidence of guilt, and this should not influence your decision in any way. It’s your duty to separately apply the evidence as it relates to each charge and return a separate verdict as to each one.”
These instructions, however, did not specifically address the propensity and prejudicial issues that Hatton faced as a result of the joinder of both robberies. See United States v. Holloway, 740 F.2d 1373, 1377 n. 5 (6th Cir.1984). “While a limiting instruction can minimize the prejudicial impact of prior criminal acts, it is not ‘a surefire panacea for the prejudice resulting from needless admission of such evidence.’ ” United States v. Clay, 667 F.3d 689, 696 (6th Cir.2012) (quoting United States v. Haywood, 280 F.3d 715, 724 (6th Cir.2002)). We have acknowledged that “[ejvidence of other bad acts undoubtedly has a powerful impact on a juror’s mind.” Id. The risk that this may have occurred here is, in my mind, too great.
C. Admissibility at separate trials
The majority concludes that each robbery would be admitted at separate trials under a theory of motive. “Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or ‘in issue,’ and (3) the evidence is probative with regard to the purpose for which it is offered.” United States v. Jenkins, 345 F.3d 928, 937 (6th Cir.2003) (quoting Haywood, 280 F.3d at 720). This Court has previously defined motive “as something within a person ... that incites him to action, or the consideration of [an] object influencing a choice or prompting an action.” United States v. Corsmeier, 617 F.3d 417, 420 (6th Cir.2010) (quoting Servo Kinetics, Inc. v. Tokyo Precision Instruments Co., 475 F.3d 783, 792 (6th Cir.2007) (internal quotation marks omitted)). In other words, “motive must indicate a causal relationship between the prior bad act and the charged criminal act.” United States v. Vance, 871 F.2d 572, 578 (6th Cir.1989) (Gibson, J., dissenting).
I am hesitant to conclude that evidence of the Smoke Shop robbery would be ad *588 missible in the Your Community Bank robbery trial under a theory of motive. Such a conclusion wanders perilously close to propensity evidence — i.e., once one commits a robbery, then one is motivated to keep committing robberies. See United States v. Phillips, 599 F.2d 134, 136 (6th Cir.1979) (explaining that “[s]omething more than repeated performance of the same class of crimes is required in evidencing a ‘design’ or ‘plan’ which, if proved, may raise the inference that the accused was the perpetrator of the crime in question”). Furthermore, the district court explicitly excluded evidence that the robberies were motivated by Hatton’s addiction to prescription pills. See, e.g., United States v. Washam, 468 Fed.Appx. 568, 572 (6th Cir.2012) (admitting evidence of a different robbery than the one at issue based on a motive to obtain funds to sustain the defendant’s drug addiction).
Our precedent has applied previously allowed evidence of a prior robbery in a robbery case under a theory of identity. See United States v. Perry, 438 F.3d 642, 648 (6th Cir.2006). However, there, the prior robbery was properly admitted because there was a common “signature,” “pattern,” or “modus operandi,” and the Court noted that these were “unlike two completely unrelated robberies.” See Perry, 438 F.3d at 648. The Smoke Shop robbery would not help a jury identify Hatton as the male robber in the Your Community Bank Robbery. Thus, the stark differences, between the robberies in this case lead me to believe that the Smoke Shop robbery would not be admissible, probative evidence on a material issue for a trial concerning the Your Community Bank robbery. See Corsmeier, 617 F.3d at 420,
D. Prejudicial effect
A Rule 404(b) analysis also requires a determination of “whether the unfair prejudicial impact of the evidence substantially outweighs its probative value.” Clay, 667 F.3d at 696; see Fed.R.Evid. 403. Based on my analysis of whether the robbery charges would be admitted at separate trials, it seems that the Smoke Shop robbery would not be probative of the Your Community Bank robbery.
Furthermore, the Smoke Shop robbery was improperly used as propensity evidence at this trial. The prosecutor’s closing clearly uses the Smoke Shop robbery to suggest that Hatton committed the Your Community Bank robbery:
So the question is what makes sense? Apparently, what the defendant wants you to believe is that he’s an armed robber because his attorney told you that in his opening statement. No question about that. He is an armed robber because he went into the M & I Smoke Shop, he was armed with a gun, things went bad, and he wound up getting shot while he was taking the money.
But he’s not an armed bank robber. That doesn’t make any sense. If you are willing to risk everything, if you are willing to risk your safety, your freedom, the well-being of your family, your month-old son, if you are willing to do all that, then you are willing to go into a bank and — if you are willing to do that all for a couple hundred dollars at a smoke shop, you are going to be more than willing and more than ready to do it at a bank for a hundred thousand dollars.
It’s risk versus reward. If your bar is set so low that you’ll pull a gun on a business owner and take everything out of his cash register, then you will go to a bank and you’ll pull a gun, along with somebody else, and you’ll clean out the vault because it takes about the same amount of time, and the take and the *589 result and the benefit is so much greater.
Armed robbers are armed robbers. It doesn’t matter what the target is. It doesn’t matter whose money — who the money belongs to. Here’s a gun, give me the money, as simple as that. If you are willing to cross that line for a couple hundred bucks, you are willing to cross that line for a hundred thousand. There’s no question about that.
PagelD# 1818-19; see Fed.R.Evid. 404(b)(1) (“Evidence of a crime ... is not admissible to prove a person’s character in order to show that on a particular occasion the person acted in accordance with the character.”); United States v. Clemis, 11 F.3d 597, 600 (6th Cir.1993). It goes without saying that such language is highly prejudicial.
E. Conclusion
Taken as a whole, I would find that reversal is warranted because there was “actual prejudice,” in that the misjoinder “had [a] substantial and injurious effect or influence in determining the jury’s verdict.” Lane, 474 U.S. at 449, 106 S.Ct. 725 (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The evidence at trial was not substantial; the limiting instructions were not sufficient; it is unlikely that the robberies would be admitted at separate trials; and the Smoke Shop robbery was used as propensity evidence in this case. Thus, I believe that I can say “with fair assurance ... that the judgment was substantially swayed by the error.” United States v. Mack, 258 F.3d 548, 555 (6th Cir.2001).
IV.
For the reasons articulated above, I respectfully dissent from the majority’s decision that the two robbery counts were properly joined and that any error was harmless.

. The facts actually developed at trial paint a much different picture than those articulated by the majority. For example, there was no evidence of eight bank robberies, Vincent Coleman, or a drug trafficking case against Wojciechowski. I limit my review to the facts before the jury. See United States v. Ramirez, 133 Fed.Appx. 196, 203 (6th Cir.2005) (reviewing the “substantial evidence introduced against [the defendant] at trial”).