RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0361p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

*v.*

    No. 06-1720

VICTOR CASTANO,

    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-80554—Lawrence P. Zatkoff, District Judge.

Argued: June 5, 2008

Decided and Filed: October 7, 2008

Before: MERRITT, MOORE, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Robert J. Dunn, LAW OFFICE, Bay City, Michigan, for Appellant. Leonid Feller, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Robert J. Dunn, LAW OFFICE, Bay City, Michigan, for Appellant. Leonid Feller, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

  MOORE, J., delivered the opinion of the court, in which MERRITT, J., joined. ROGERS, J. (pp. 11-13), delivered a separate dissenting opinion.

_____

## OPINION

_____

  KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Victor Castano ("Castano") appeals his convictions on charges of felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Castano raises two arguments in his appeal. First, Castano challenges the sufficiency of the evidence as to each of the two convictions. Second, Castano argues that errors in the verdict form and jury instructions for the § 924(c) charge amounted to plain error requiring reversal of that conviction. In particular, Castano argues that because the verdict form and portions of the jury instructions referred to the charge as being the "possession" of a firearm "during" a drug trafficking crime—which is a non-existent offense—substantial doubt exists as to whether the jury possibly convicted Castano of that non-existent offense instead of the § 924(c)

1

charge on which he had been indicted, that of carrying a firearm during and in relation to a drug trafficking crime.

For the reasons set forth below, we **REVERSE** Castano's § 924(c) conviction, **AFFIRM** his § 922(g) conviction, and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Procedural History

On June 17, 2004, police officers working for the St. Clair County (Michigan) Drug Task Force arrested Castano. The officers arrested Castano after making a traffic stop on the basis of a tip provided by a confidential informant that a man named "Victor" would be making a large-scale marijuana transaction at the Norway Bar in Avoca, Michigan. The confidential informant told the officers that the man would be driving a black and white pick-up truck with a specific license-plate number and that marijuana would be in a box in the back of the truck.

When the officers pulled over the truck, they found that Castano was driving and that his girlfriend, Melissa Sue Gordon ("Gordon"), was a passenger inside the truck. After stopping the truck and requesting that Castano and Gordon exit the vehicle, an officer observed in the bed of the truck a large box, which the officer was able to ascertain contained marijuana. The officers searched Castano and found that he was carrying $1,749 in cash; the officers' search of the truck revealed a loaded .44-caliber Smith & Wesson revolver in the truck's center console, positioned within easy reach of the driver.

On June 17, 2005, a federal grand jury indicted Castano and Gordon, charging both with one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). The Indictment also charged Castano with one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and one count of "carry[ing] a firearm . . . during and in relation to a drug trafficking crime," in violation of 18 U.S.C. § 924(c). Joint Appendix ("J.A.") at 12-14 (Indictment at 1-3).

Castano filed a motion to suppress the evidence that the officers seized from the truck when they arrested Castano. After holding an evidentiary hearing, the district court denied Castano's motion to suppress. In his appeal, Castano does not challenge the denial of his motion to suppress.

On February 21, 2006, the morning of trial, Castano pleaded guilty to the charge of possession with intent to distribute marijuana. The trial therefore involved the government's case against Gordon on the charge of possession with intent to distribute marijuana and against Castano on the charges of felon in possession of a firearm and carrying a firearm during and in relation to a drug trafficking crime. Castano moved for a judgment of acquittal at the close of the government's case and again prior to submission of the case to the jury, and the district court reserved decision on the motions. On February 23, 2006, the jury convicted Castano on both firearm-related charges and also convicted Gordon on the charge of possession with intent to distribute marijuana. Castano renewed his motion for acquittal on March 2, 2006, but the district judge denied the motion.

The district court sentenced Castano to a total of 102 months in prison. Castano's trial counsel timely filed a notice of appeal.[1]

---

[1] On June 28, 2006, we dismissed Castano's appeal for want of prosecution. In July 2006, Castano filed a letter which we construed as seeking to reinstate the appeal, and on November 21, 2006, the district court issued an order granting what it construed as Castano's request to proceed in forma pauperis. Upon reinstating Castano's appeal, we appointed Castano's present counsel.

**B. Evidence at Trial**

At trial, the government presented evidence that in June 2004 Castano was in the business of selling large quantities of marijuana in the area of Port Huron, Michigan. On June 17, 2004, Castano planned to deliver fifty pounds of marijuana to a man named Delbert Rush at the Norway Bar in Avoca, Michigan. Castano obtained the fifty pounds of marijuana from a source he identified as a man named "Julio," who gave Castano the marijuana in exchange for Castano's promise to pay Julio $800 per pound after Castano re-sold the marijuana.

To transport the marijuana, Castano borrowed a black 1995 Dodge pick-up truck from William Lonsby ("Lonsby"), an acquaintance from the Devil's Diciples Motorcycle Club.[2] Castano told Lonsby that he needed the truck to move his motorcycle.

Lonsby testified that he habitually cleaned his truck before loaning it to friends and that, prior to loaning the truck to Castano, he cleaned the glove box as well as the center console before leaving the truck in his driveway for Castano, with the keys in the ignition. Lonsby testified that he was not aware of any gun in the truck when he left it for Castano on the night of June 16, 2004.

After taking the truck on the morning of June 17, 2004, Castano drove to Mercy Hospital in Port Huron, Michigan, where he spent three hours being treated for high blood pressure, numbness in his arm, and a headache. Castano then checked himself out of the hospital against medical advice.

At some point during the day of June 17, 2004, Castano's girlfriend, Gordon, joined him, and the two drove to a store where, at 2:36 p.m., Gordon purchased three boxes of twenty-count Glad Lock one-gallon size storage bags. Castano and Gordon used the bags to package the marijuana, which had been kept in a storage unit in Clinton Township, and they placed the packaged marijuana into a large cardboard box. They then loaded the cardboard box containing fifty pounds of marijuana into the truck and Castano drove them to the Norway Bar, where he planned to sell the marijuana to Delbert Rush. Alerted by a confidential informant, members of St. Clair County (Michigan) Drug Task Force monitored the bar and observed Castano and Gordon arrive in a black pick-up truck bearing a license plate matching the description that the informant had provided.

The drug deal apparently fell through; after half an hour, Castano and Gordon left the bar with the marijuana still in the box in the back of the truck. The officers conducting surveillance of the location pulled the truck over after Castano began to drive away from the bar. The officers' subsequent search of Castano and the truck revealed that he was carrying $1,749 in cash, that the truck contained a cardboard box holding a substantial amount of marijuana, and that the truck's center console contained a loaded .44-caliber Smith & Wesson revolver. One officer testified that the console in the truck is "directly next to" the driver. J.A. at 205-06 (Trial Tr. I at 150-51).

The government presented evidence regarding the connection between firearms and drug transactions. An officer testified that individuals engaged in drug trafficking frequently carry firearms because such individuals "commonly feel the need to protect themselves" and because "[t]hey sometimes carry large amounts of money or large amounts of drugs and they feel the need to protect themselves or their money or drugs." J.A. at 177 (Trial Tr. I at 122); *see also* J.A. at 201 (Trial Tr. I at 146) (testimony of another officer that "typically if somebody is selling drugs or buying drugs, it's a dangerous situation. Sometimes there is a lot of money to be exchanged. So with all of those factors it can be just a dangerous situation. It's common for a gun to be present.").

---

[2] The group intentionally misspells the word "disciples" as "diciples" as "a form of showing we are not devil worshipping disciples of sorts." J.A. at 369-70 (Trial Tr. II at 124-25).

The government also presented evidence that Castano lied to or misled an FBI agent about his activities on the day of his arrest. In an interview on July 5, 2005, Castano told an FBI agent that he picked up the truck at Vernon Rich's house. Lonsby, the owner of the truck, testified that he left the truck in his own driveway for Castano to pick up. Vernon Rich testified that he did not see either Castano or Gordon on the morning of June 17, 2004, and that Lonsby's truck was not at Rich's house that day. The FBI agent also testified that Castano "denied having any knowledge of the firearm in the truck when he was arrested," but that Castano also said "that he understood that logically with his past history and the circumstances of this drug dealing it was hard to believe that he didn't know about the firearm in the truck." J.A. at 303 (Trial Tr. II at 58).

After the close of the government's case and after moving for a judgment of acquittal, Castano presented testimony from two witnesses who claimed to be responsible for the firearm in the truck. Keith McFadden ("McFadden") testified first, followed by his common-law wife, Stella Herron ("Herron"). McFadden stated that he and Castano belonged to the Devil's Diciples motorcycle club and that he had "been a friend of Vic's [Castano] for quite a few years." J.A. at 369, 380 (Trial Tr. II at 124, 135). McFadden claimed that the gun belonged to him and his common-law wife, Herron, that he was with Herron when she purchased the gun in Alabama, and that Herron had a "Carrying Concealed Weapon" permit in Alabama. J.A. at 370-72 (Trial Tr. II at 125-27). McFadden testified that he and Herron borrowed Lonsby's truck at different times in May 2004 and June 2004, including the night before Lonsby loaned the truck to Castano. McFadden stated that Herron is an adult entertainer, or stripper, and that she carried a bag containing her boots, dancing outfits, and her gun. McFadden asserted that when she takes her bag into bars, "she's not allowed to carry a weapon into an establishment that sells alcohol" and that she thus "left [the firearm] in the console of the truck" that they borrowed from Lonsby. J.A. at 376 (Trial Tr. II at 131).

McFadden testified that after Herron finished dancing for the evening on June 16, 2004, they went to another bar and ended up falling asleep at his brother's house. He said when they woke up the next morning, they learned that Castano "needed to use the truck. And I dropped it off at Whiskey Pete's." J.A. at 377 (Trial Tr. II at 132). McFadden explained that they met Castano at Whiskey Pete's in the morning, that Herron had several beers, and that Castano took the truck and McFadden took Castano's motorcycle, which McFadden rode to pick up his own motorcycle. McFadden claimed that he and Herron rode his motorcycle to Indiana and that they realized only after Castano was arrested that Herron had forgotten the firearm in the console of the truck. The government's cross-examination of McFadden highlighted a few inconsistencies between the description of events that McFadden gave at trial and the version that he told an FBI agent during an interview prior to trial.

Herron testified next, and she stated that she purchased the gun in Alabama, although she conceded that she lacked any documentation of the sale and that her permit to carry had expired in 1997, which was prior to the purchase of this gun. She acknowledged having previously told an FBI agent that she was carrying the gun in a jacket pocket. She stated that she was an alcoholic in June 2004 and that she could not remember much about the night of June 16, 2004, or where she woke up the next morning, but that she did remember feeling sick to her stomach and that she did not have any more alcohol that morning. She stated that she and McFadden drove a truck to Indiana after returning Lonsby's truck to Castano. Herron was the last witness to testify. Castano thereafter moved for judgment of acquittal, and the district court again reserved judgment.

In instructing the jury, the district court made several misstatements regarding the § 924(c) charge. The district court referred to count three as "the crime of *possession* of a firearm *during* a drug trafficking crime," J.A. at 469 (Trial Tr. III at 28) (emphases added), when in fact the indictment charged Castano with "*carry*[ing] a firearm . . . during *and in relation to* a drug trafficking crime," J.A. at 13-14 (Indictment at 2-3) (emphases added). The district court repeated

this mistake—substituting "possess" for "carry" and omitting "in relation to"—two further times. J.A. at 469 (Trial Tr. III at 28). The district court did proceed to state correctly the elements of a § 924(c) carriage offense but did not provide a correction to the misstatements. The same errors appeared on the paper copy of the jury instructions,[3] which the jury received for use in deliberation. J.A. at 539 (Trial Tr. III at 98). The verdict form that the jury foreperson signed contained the same erroneous substitution of "possession" for "carrying" and use of "during" without the additional "and in relation to" language. J.A. at 45 (Verdict Form) ("COUNT THREE: Possession of a Firearm During a Drug Trafficking Crime"). Finally, when the district court entered the judgment in this case, the court erroneously stated that the jury convicted Castano of "*POSSESSION* OF A FIREARM *IN FURTHERANCE OF* A DRUG TRAFFICKING CRIME." J.A. at 17 (Judgment at 2) (emphases added).

In addition to the district court's errors, the government's closing argument also omitted the "in relation to" portion of the standard of participation. The government concluded its argument by stating that "Victor Castano on that day was a convicted felon in possession of a firearm and he did it doing a drug trafficking crime." J.A. at 537 (Trial Tr. III at 96). Earlier in closing arguments, the government stated that an issue for the jury to decide was whether "Mr. Castano was carrying a firearm while both of them were involved in this drug trafficking crime." J.A. at 475 (Trial Tr. III at 34). In its closing argument, the government also asserted that the evidence was clear that the jury "could find [Castano] guilty both with being a felon who has been previously convicted of a felony in possession of a firearm and carrying that firearm with him. Carrying it with him during a drug trafficking crime." J.A. at 498 (Trial Tr. III at 57).

## II. ANALYSIS

In addition to challenging his § 924(c) conviction on the basis of the errors in the jury instructions and verdict form, Castano challenges the sufficiency of the evidence as to both his § 924(c) and his § 922(g) convictions. We address his § 924(c) claim first and we hold that his § 924(c) conviction involved plain error that warrants reversal. We then consider his sufficiency-of-the-evidence challenge as to his § 922(g) conviction.

### A. Castano's Claim that the Incorrect Verdict Form and Jury Instructions were Plain Error Requiring Reversal of his Conviction under § 924(c)

In *United States v. Combs*, 369 F.3d 925, 930-33 (6th Cir. 2004), we held that 18 U.S.C. § 924(c) criminalizes two distinct offenses. The first is a "'use or carriage' offense, which has 'during and in relation to' as its 'standard of participation,'" and the second is "a 'possession' offense, which has 'in furtherance of' as its standard of participation."[4] *United States v. Savoires*, 430 F.3d 376, 379 (6th Cir. 2005) (quoting *Combs*, 369 F.3d at 930-33). Castano's Indictment charged him with the "carriage" offense under § 924(c), charging that he "carr[ied] a firearm . . . during and in relation to a drug trafficking crime." J.A. at 13-14 (Indictment at 2-3). On appeal, Castano argues that his conviction for violating § 924(c) should be reversed because the verdict form described count three as "*Possession* of a Firearm *During* a Drug Trafficking Crime," J.A. at 45

---

[3] Although a copy of the written jury instructions was not included in the Joint Appendix, the instructions have since been supplied to this court. The misstatements appear on pages 51-53 of the written instructions.

[4] In relevant part, § 924(c) states that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm . . . shall . . . be sentenced to a term of imprisonment of not less than 5 years." That is the "use or carriage" offense.

The relevant language in § 924(c) for the "possession" offense is as follows: "any person . . . who, in furtherance of any such crime [of violence or drug trafficking crime], possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years."

(Verdict Form) (emphases added), and because portions of the jury instructions committed the same mistakes, J.A. at 469 (Trial Tr. III at 28) (repeatedly referring to count three as "the crime of *possession* of a firearm *during* a drug trafficking crime") (emphases added). In addition, although neither Castano nor the government noticed the mistake in the district court's judgment, the district court's error in stating that Castano had been convicted of *possession* of a firearm *in furtherance of* a drug trafficking crime further underscores the considerable confusion that permeated this case.

### 1. Legal Standards

Castano did not object in the district court to the errors in the verdict form, jury instructions, and judgment, and we therefore analyze his claim under the plain-error standard of review. Under plain-error review, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). The phrase "affects substantial rights" means "in most cases . . . that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson*, 520 U.S. at 467 (alteration in original) (internal quotation marks omitted) (quoting *Olano*, 507 U.S. at 732). "In the context of challenges to jury instructions, '[p]lain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice.'" *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006) (quoting *United States v. Combs*, 33 F.3d 667, 669 (6th Cir. 1994)) (alteration in original).

### 2. Analysis

Castano argues that because the verdict form incorrectly described count three as "Possession of a Firearm During a Drug Trafficking Crime" "confusion reigned about exactly which offense [Castano] was tried for in Count III and what the necessary elements were." Appellant Br. at 15. In addition, portions of the jury instructions repeated this error, and the district court erred further in entering a judgment stating that Castano had been convicted of possession of a firearm in furtherance of a drug trafficking crime. The jurors not only heard these errors in the jury instructions when the district court read the instructions aloud but also saw these same errors in the paper copy of the instructions that they received prior to beginning deliberation. The oral instructions referred three times to count three as involving "the crime of *possession* of a firearm *during* a drug trafficking crime," J.A. at 469 (Trial Tr. III at 28) (emphases added), incorrectly substituting "possession" for "carrying" and omitting "and in relation to" from the standard of participation. Indeed, although one portion of the jury instructions did correctly set forth the elements of a § 924(c) "carriage" offense, the page of the written instructions containing that correct statement also erroneously stated that the crime was "*possession* of a firearm *during* a drug trafficking crime." Jury Instructions at 53 (emphasis added). In its closing argument, the government made similar misstatements, asserting that the jury could convict Castano if it found that he carried the firearm "with him during a drug trafficking crime." J.A. at 498 (Trial Tr. III at 57).

In making his argument, Castano relies heavily on *Combs* and *Savoires*, cases in which we reversed the defendants' § 924(c) convictions because their cases involved similar errors intermingling the two distinct § 924(c) offenses. *See* Appellant Br. at 14, 20. In addition to those cases, in *United States v. Lowe*, 172 F. App'x 91, 94 (6th Cir. 2006) (unpublished), under plain-error review, we reversed a defendant's § 924(c) conviction in a case in which the "jury instruction mixed the elements of two separate offenses, thus effectively amending the indictment and reducing the standard of conduct necessary for conviction of the crime charged." Likewise, in *United States v. Wilkins*, 253 F. App'x 538, 546 (6th Cir. 2007) (unpublished), also under plain-error review, we

similarly reversed a § 924(c) conviction because "the instructions mixed the elements of the use or carry offense with those of the possession offense." We also rejected the government's argument "that the error was not prejudicial," explaining that the facts of the case were "such that the jury could have found that the defendant carried a firearm during and in relation to his marijuana offense while concluding that the government had failed to meet the higher standard of possessing the firearm 'in furtherance of' that drug offense." *Id.* The government also points to *Combs* and *Savoires*, as well as to our decision in *United States v. Lloyd*, 462 F.3d 510, 514-16 (6th Cir. 2006), a case in which, under plain-error review, we evaluated a duplicitous indictment charging two § 924(c) crimes and affirmed the conviction despite the duplicitous indictment because the verdict form cured the error and the jury instructions did not cross-match the two § 924(c) offenses.

We agree with Castano that his case bears far more resemblance to *Combs*, *Savoires*, *Lowe*, and *Wilkins*, and our rationale for affirming the conviction in *Lloyd* does not apply to the facts of in this case. In *Combs*, as here, we confronted a situation in which one count of the indictment "properly charged a § 924(c) . . . offense." *Combs*, 369 F.3d at 934. In *Combs*, that count was a "possession" offense, whereas in this case the indictment properly charged a "carriage" offense. *Id.* In *Combs*, "[t]he jury instructions . . . cross-matched the conduct from the 'possession' offense with the standard of participation from the wholly distinct 'use' [or carriage] offense." *Id.* at 935. The mistake in Castano's case was even greater. In *Combs*, the jury instructions cross-matched the indicted conduct ("possession") with the incorrect standard of participation, namely "during and in relation to," which is the statutory standard of participation for the "carriage" offense. *Id.* In Castano's case, the verdict form and jury instructions cross-matched a *non-existent* standard of participation (simply "during") with un-indicted conduct ("possession" instead of "carrying"). Further, this error occurred three times in the course of Castano's oral jury instructions, and this error even appeared on the specific page of the written jury instructions that did manage to state correctly the elements of a § 924(c) carriage offense. Jury Instructions at 53; J.A. at 469-70 (Trial Tr. III at 28-29). Finally, the district court's error in the judgment further demonstrated the confusion and uncertainty in this case.

In *Combs*, we concluded that "an impermissible amendment of Count IV of the indictment occurred" because "[t]hough indicted on a charge of unlawful possession of a firearm under § 924(c), [the defendant] was nevertheless convicted of a different offense—unlawful use and carrying of a firearm." *Id.* at 936. We noted that amendments of indictments "are considered prejudicial per se, warranting reversal of a conviction because they 'directly infringe upon the fifth amendment guarantee' to hold a defendant answerable only for those charges levied by a grand jury." *Id.* at 935 (quoting *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989)). We thus concluded that "[b]ecause the record established that [the defendant] was convicted of an offense that was not the subject of his indictment, his conviction on Count IV must be reversed." *Id.* at 936. As we explained above, Castano's case is similar if not worse—the errors in his jury instructions and verdict form created the potential that the jury convicted him of a *non-existent* crime, that of "possessing a firearm during a drug trafficking offense." Although Castano has focused his argument on the jury instructions and verdict form and has not argued that his indictment was amended, we nonetheless consider the analysis in *Combs* as relevant to Castano's challenge to the jury instructions and verdict form.

Our decision in *Savoires* offers further support for vacating Castano's § 924(c) conviction. In *Savoires*, the indictment was duplicitous, with a single count charging two separate crimes, namely both a "possession" offense and a "carriage" offense. *Savoires*, 430 F.3d at 379-80 (noting that the count alleged "that Savoires 'carr[ied] *and* possess[ed]' a firearm 'during and in relation to *and* in furtherance of' a drug trafficking crime") (alterations in original). We noted that the jury instructions failed to clarify the duplicitous indictment. *Id.* at 380. In fact, "the instructions combined elements of the separate 'use or carriage' and 'possession' offenses, expressly authorizing a conviction if the jury found that Mr. Savoires 'used or carried *or possessed*' a firearm '[d]uring

and in relation to' a drug trafficking crime." *Id.* (alteration in original). Under plain-error review, we held that "[t]he duplicity of the indictment and the related defects in the charge to the jury are plain in light of our *Combs* decision. At the very least, these errors affected Savoires' substantial rights by authorizing a conviction for a non-existent offense." *Id.* at 381. We concluded that "[w]e are satisfied, therefore, that plain error has been established . . . and that the § 924(c) conviction must be reversed." *Id.* As in *Savoires*, the errors in Castano's case "authoriz[ed] a conviction for a non-existent offense" and Castano's § 924(c) conviction should be reversed.

Our decision in *Lowe* provides similar support for reversing Castano's conviction, as *Lowe* also involved an error of cross-matching conduct with a non-existent standard of participation that is very similar to the error in this case. In *Lowe*, we noted that the indictment correctly charged a § 924(c) "possession" offense. *Lowe*, 172 F. App'x at 94-95. The jury instructions, however, incorrectly "instructed the jury that Count Two of the indictment charged that Lowe 'did knowingly *carry* and possess firearms, . . . *during and* in furtherance of a drug trafficking crime . . .'" *Id.* at 95 (alterations in original). We observed that "[t]his is clearly a misstatement of the indictment's actual language, and it does not accurately state either the "use" or the "possession" offense." *Id.* Acknowledging that "the evidence may well have been sufficient to support a jury verdict under a correct instruction," we nonetheless concluded that "the district court plainly erred" because the jury instructions "conflat[ed the] elements of the separate offenses in several parts of the jury instructions" and also incorrectly defined the phrase "possession in furtherance of" such that the errors "deprived the jury of the opportunity to come to that verdict." *Id.* at 96-97. We now face a very similar situation: the government's evidence may well have been sufficient to convict Castano of either a § 924(c) carriage offense or a § 924(c) possession offense, but the errors and confusion that pervaded Castano's trial "deprived the jury of the opportunity to come to that verdict." *Id.* These errors appeared in the government's closing argument, in both the oral and written jury instructions, in the verdict form, and even in the judgment of conviction that the district court entered after trial.

The reasoning of our decision in *Wilkins* further illustrates the error and potential prejudice in Castano's case. As stated above, that case involved jury instructions that "mixed the elements of the use or carry offense with those of the possession offense." *Wilkins*, 253 F. App'x at 546. We held that the error was prejudicial because the errors in the instructions could have led the jury to convict the defendant under a lower standard than that charged in the indictment. In *Wilkins*, the indictment charged the defendant with "possession of a firearm in furtherance of a drug trafficking crime," *id.* at 539, and we noted that the jury could have convicted under the lower "during and in relation to" standard of participation, rather than the higher standard of "in furtherance of," *id.* at 546. Again, in Castano's case, the error is similar and likely worse: the errors in the jury instructions and verdict form could have led the jury to convict Castano simply because it found he possessed the firearm *during* the drug trafficking crime—a standard of participation that § 924(c) does not criminalize at all—rather than finding that the government met the correct and higher statutory standards of either carrying a firearm during *and in relation to* a drug trafficking crime or possessing a firearm in furtherance of a drug trafficking crime.

Finally, our decision to affirm a § 924(c) conviction in *Lloyd* offers no support to the government. As in *Savoires*, the indictment in *Lloyd* was duplicitous, charging both a possession and a carriage or use offense in a single count. *Lloyd*, 462 F.3d at 514. We noted the similarity to *Savoires* but explained that because the jury instructions in *Lloyd* did *not* cross-match elements of the two offenses, they "did not suffer from the same defect as those in the *Savoires* case of authorizing a conviction based on actions which do not constitute a federal crime." *Id.* at 515. The instructions in Castano's case, on the other hand, plainly did involve such cross-matching and did authorize such a conviction. Furthermore, we observed in *Lloyd* that "the verdict form provided to the jury made no mention at all of the possession offense," referring only to the carriage or use offense. *Id.* In light of those differences, we distinguished *Savoires* and affirmed the defendant's

conviction. We explained that although "[c]ount two of the indictment was duplicitous, . . . the jury instructions clarified the two separate offenses and the verdict form reflects that all members of the jury convicted [the defendant] of the use offense." *Id.* The errors in Castano's case are plainly different from the facts in *Lloyd*, and here the erroneous verdict form and jury instructions did in fact potentially authorize a "conviction based on actions which do not constitute a federal crime." *Id.*

The jury instructions and verdict form for Castano's § 924(c) count were infected by a number of errors. As in *Combs*, *Savoires*, *Lowe*, and *Wilkins*, those errors impermissibly authorized a conviction of a non-existent offense, which in this case was that of possessing a firearm simply during a drug trafficking offense. Further, the cross-matching that occurred in this case was more prejudicial than that in either *Combs* or *Savoires*. The errors in those cases merely paired a correct statutory standard of participation with non-matching conduct, whereas this case paired unindicted conduct (possession) with an erroneous, non-existent standard of participation—simply "during," rather than the more onerous statutory standard of "during and in relation to" or the still more demanding and correct standard of "in furtherance of." For these reasons, this case is unlike *Lloyd* and there is significant doubt that the jury convicted Castano of an offense that § 924(c) criminalizes. Indeed, the errors in this case were "clearly erroneous" and were such that could "likely produce a grave a miscarriage of justice." *Newsom*, 452 F.3d at 593 (internal quotation marks omitted). We therefore hold that the district court plainly erred and we **REVERSE** Castano's § 924(c) conviction.[5]

## B. Castano's Sufficiency-of-the-Evidence Challenge as to his § 922(g) Conviction

### 1. Standard of Review

"In reviewing an insufficiency-of-the-evidence claim, we must consider 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Newsom*, 452 F.3d at 608 (quoting *United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003)). "'We are bound to make all reasonable inferences and credibility choices in support of the jury's verdict.'" *Id.* (quoting *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990)). "'Actual or constructive possession is sufficient to give rise to criminal liability under § 922(g). Both actual and constructive possession may be proved by circumstantial evidence.'" *United States v. DeJohn*, 368 F.3d 533, 545 (6th Cir. 2004) (quoting *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003)).

### 2. Analysis

Castano argues that the government failed to introduce sufficient evidence that he knew about the firearm in the truck and that he had constructive possession of the firearm. Castano relies heavily upon our opinion in *Newsom*, in which we stated that "the defendant's mere presence in a car where a gun is found and proximity to a gun are insufficient proof of constructive possession." *Newsom*, 452 F.3d at 609. Castano contrasts his case to *United States v. Carter*, 355 F.3d 920, 925

---

[5] As explained above, we hold that the errors in the verdict form, jury instructions, and judgment constitute plain error under the four-part *Olano* test warranting reversal of Castano's § 924(c) conviction and a remand for further proceedings consistent with this opinion. Although Castano's brief is unclear, he appears to contend that his § 924(c) conviction should be reversed on an alternative ground as well, specifically claiming that there is insufficient evidence to support his conviction under § 924(c). While we believe that the plain errors discussed above were prejudicial and seriously affected the fairness and integrity of the district court proceedings, we must reject Castano's alternative sufficiency-of-the evidence challenge to his § 924(c) conviction. The evidence introduced at trial would allow a rational juror—if properly instructed and guided by the court via a correct verdict form—to find the essential elements of the § 924(c) offense. *See Newsom*, 452 F.3d at 608. Thus, although we reject Castano's sufficiency-of-the-evidence challenge to his § 924(c) conviction, we reverse his § 924(c) conviction based on the plain errors discussed in the text above, and we remand for further proceedings consistent with this opinion.

(6th Cir. 2004), a case in which we rejected an insufficiency-of-the-evidence challenge and affirmed the defendant's § 922(g) conviction because the government offered evidence that officers saw the defendant attempt to conceal the gun in the car. Finally, Castano argues that McFadden and Herron's testimony offered an explanation for the presence of the gun and that "even if the jury disbelieved the entire defense testimony, that disbelief cannot constitute evidence of the crimes charged that somehow substitute for knowing constructive possession in this joint occupancy situation." Appellant Br. at 13.

The government responds by arguing that ample evidence supported the jury's finding that Castano had constructive possession of the firearm. The government also cites our decision in *Newsom*, observing that we in fact *affirmed* the defendant's § 922(g) conviction after stating that "'[a]lthough 'mere proximity' to a gun is insufficient to establish constructive possession, evidence of some other factor—including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise—coupled with proximity may suffice.'" *Newsom*, 452 F.3d at 610 (quoting *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003)).

The government identifies several pieces of evidence to demonstrate the presence of other factors that, coupled with the proximity of the firearm in the truck to Castano's position as the driver, suffice to support his conviction. Multiple officers testified about the frequency of finding firearms when making arrests for drug trafficking offenses and about the need for drug traffickers to protect themselves. Indeed, in this case Castano pleaded guilty to possessing with intent to distribute fifty pounds of marijuana, which he had received in exchange for promising to pay the seller $40,000 after Castano re-sold the drugs. This evidence provided a basis for the jury to conclude that Castano had a powerful motive to protect himself and his significant investment in advance of the drug deal at the Norway Bar, especially considering that the deal wound up falling through after the parties apparently encountered difficulty in their negotiations. Finally, the government presented evidence that Castano had been evasive and misleading in explaining the events of June 17, 2004, in an interview with an FBI agent: the agent testified that Castano said that he picked up Lonsby's truck at Vernon Rich's house, but Lonsby testified to leaving the truck in his own driveway and Rich testified that Lonsby's truck was not at Rich's house on that day.

The above evidence demonstrated that Castano had a strong motive to possess a firearm to protect himself and his drugs during the planned drug transaction at the Norway Bar. Under these circumstances, we **AFFIRM** his § 922(g) conviction.

## III. CONCLUSION

For the reasons discussed above, we **REVERSE** Castano's § 924(c) conviction, **AFFIRM** his § 922(g) conviction, and **REMAND** for further proceedings consistent with this opinion.

---

**DISSENT**

---

ROGERS, Circuit Judge, dissenting. I concur in the majority opinion except for Part II.A., but I would affirm. Although I agree that the district court clearly committed error in instructing the jury on the firearm charge, there is no reasonable basis for concluding that this error affected the outcome of the proceedings. A jury that found that Castano possessed the revolver in question would surely have found that he also carried that weapon. Furthermore, the instructions unmistakably required that the carrying of the weapon have been during and in relation to Castano's drug trafficking crime.

As even Castano concedes, his failure to object to the jury instructions and verdict form at trial means that his challenge to them is now reviewable only for plain error. This means that Castano must establish "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotations and citation omitted).

While Castano has shown errors that are obvious or clear, he has not established that these mistakes had an impact on the outcome of the trial and thus affected his substantial rights. *See United States v. Davis*, 514 F.3d 596, 615 (6th Cir. 2008). The primary defect alleged here is the use of the term "possession" instead of "carrying" in the instructions and on the verdict form. However, as the Supreme Court has observed, the phrase "carries a firearm" includes the act of "knowingly possess[ing] and convey[ing] firearms *in a vehicle*, including in the locked glove compartment." *Muscarello v. United States*, 524 U.S. 125, 126-27 (1998) (emphasis added). This interpretation obviously extends to firearms that are "possessed and conveyed" in the console of a vehicle. *United States v. Andas-Gallardo*, 3 F. App'x 959, 964-65 (10th Cir. 2001); *see also United States v. Eyer*, 113 F.3d 470, 476 (3d Cir. 1997) (holding that the defendant "carried" a firearm located in his vehicle's console).

On the facts of this case, then, the district court's use of "possession" instead of "carrying" was not prejudicial. Castano does not dispute that there was a loaded revolver in the console of the truck that he was driving at the time that officers pulled him over and discovered fifty pounds of marijuana in the back of that vehicle. Under these facts and the caselaw discussed above, a jury could easily find that Castano carried a firearm during and in relation to a drug trafficking crime. Moreover, because there is no difference between "carrying" and "possessing and conveying in a vehicle," there is no reason to think that Castano's actual jury, which is alleged to have found him guilty of possession, would not have found him guilty of carrying as well.

Similarly, Castano has not shown that the district court's occasional use of the incomplete phrase "during" instead of the full "during and in relation to" affected his substantial rights by prejudicing the jury. As Castano points out, the district court did incompletely refer to the standard of participation for the carrying offense a few times in the instructions and then once on the verdict form. In both the oral and written instructions, however, the district court properly told the jury that § 924(c) punishes "whoever, during *and in relation to* any drug trafficking crime . . . uses or carries a firearm." Then, in listing the essential elements of the §924(c) charge against Castano, the district court told the jurors in both sets of instructions that they could not convict unless they found beyond a reasonable doubt that Castano carried a firearm "during *and in relation to* the controlled substance distribution crime" (emphasis added). The district court then went on, in both the oral and written instructions, to define "[t]he term during *and in relation to*" properly to mean that

the firearm must have some purpose or effect with respect to the crime charged . . . [that] the firearm must facilitate or further[,] or have the potential of facilitating or furthering the crime charged . . . and *its presence or involvement cannot be the result of an accident or a coincidence.*

(Emphasis added).

When all of the relevant statements are taken together, it is clear that the occasional omission of "and in relation to" in the instructions did not affect Castano's substantial rights. Contrary to Castano's contentions, the instructions plainly did not allow for a conviction if his carrying of the revolver was unknowing or coincidental. The definition of "during and in relation to" provided to the jury explicitly forbade a conviction unless the jury found, beyond a reasonable doubt, that the presence of the revolver was connected with the drug trafficking crime. Although it was error for the district court at times simply to say "during," that statement is not inconsistent with the more detailed instruction that the carrying could not be coincidental such that the jury would have been confused by any difference in terminology. The jury must be presumed to have followed this instruction. *See United States v. Davis*, 306 F.3d 398, 416 (6th Cir. 2002).

Furthermore, there was plenty of evidence in the record from which the jury could conclude that Castano carried the revolver during and in relation to his drug trafficking crime. Lonsby testified that there was not a gun in the console of his vehicle the night before he lent the vehicle to Castano, and that no one else used the vehicle in the interim. This testimony strongly suggests that Castano knew of the gun's presence in the console, and that the gun was thus not there by accident. Moreover, a police officer testified that drug traffickers frequently carry firearms because they "carry large amounts of money or large amounts of drugs" and thus "commonly feel the need to protect themselves." Evidence was also offered that Castano was in a weakened physical state, and thus had greater need for protection, at the time that he was caught with the revolver and drugs. Just hours before his arrest, Castano was admitted to a hospital for high blood pressure and numbness in his arm. This evidence, along with the officer's statements, supports that the revolver had "purpose or effect" with respect to Castano's drug trafficking crime. *See United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999).

The instant action is readily distinguished from the cases relied on by Castano where this court found reversible error. The cases relied upon by Castano in this regard are different in one key respect: each involved a defendant charged with *possession* who was subject to the possibility that the jury was permitted to convict on the lower standard of participation associated with the different crime of carrying. *See United States v. Combs*, 369 F.3d 925, 934-35 (6th Cir. 2004),[1] *United States v. Savoires*, 430 F.3d 376, 379 (6th Cir. 2005),[2] *United States v. Wilkins*, 253 F. App'x 538, 545 (6th Cir. 2007); *United States v. Lowe*, 172 F. App'x 91, 94 (6th Cir. 2006). In contrast, Castano was

---

[1] The *Combs* case also involved another count (Count III in that case) for which the indictment did not charge the defendant with an actual crime—not the case here. 369 F.3d at 934.

[2] *Savoires* actually involved a duplicitous charge, but our harmless-error analysis focused on the concern raised by a possession count:

> Mr. Savoires' substantial rights were prejudiced. Significantly, the "in furtherance of" element of the § 924(c) "possession" offense constitutes "a higher standard of participation" than "during and in relation to." *Combs*, 369 F.3d at 933. It follows from this that the jury might have found Mr. Savoires guilty of an "offense"—possession of a firearm during and in relation to a drug trafficking crime—that is not criminalized by § 924(c). We note that the prosecutor's closing argument invited just such a finding.

430 F.3d at 380.

properly charged with *carrying*. In each of the four possession cases, there would be prejudice if a jury that would find "during and in relation to" might not find "in furtherance of." This is a particular problem in situations where the weapon does not actually threaten someone during a drug transaction:

> There are situations where a possession would be "during and in relation to" drug trafficking without "furthering or advancing" that activity. For example, a drug buyer might steal a gun from his dealer's house during a deal. The buyer's possession would be during and in relation to drug trafficking, but the buyer's possession would not advance that operation. As another example, if a buyer came to the seller's home for a purchase and left a gun there by mistake, the seller's possession would be "during and in relation to" the trafficking without furthering it.

*Combs*, 369 F.3d at 933 (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 413 (5th Cir. 2000)). The four cases relied upon by Castano similarly involved situations where a jury might find that a firearm was possessed "during and in relation to" drug trafficking but not "in furtherance of" drug trafficking. The cases involved trading drugs for rifles (*Combs*, 369 F.3d at 930); keeping a shotgun in the dining room (*Savoires*, 430 F.3d at 378); keeping a pistol in a van console (*Wilkins*, 253 F. App'x at 540); and keeping a revolver and a shotgun in a crack house (*Lowe*, 172 F. App'x at 93). In each of these cases we specifically relied on the possibility that a jury might have found that the defendant possessed a firearm "during and in relation to" drug trafficking, but might not have found that the firearm was possessed "in furtherance of" drug trafficking. *Combs*, 369 F.3d at 934, 936; *Savoires*, 430 F.3d at 380-81; *Wilkins*, 253 F. App'x at 546; *Lowe*, 172 F. App'x at 96.

In contrast, Castano was charged with the different crime of carrying. He could not have been prejudiced by jury confusion regarding the standard of participation, as in the four cases discussed above, because a defendant charged with carrying need only meet the *lower* standard of participation—"during and in relation to." The only possible prejudice to a defendant charged with carrying, in a case where instructions have mixed the elements of the two crimes, is that jurors might convict a defendant of carrying based on a finding of mere possession. While that danger is presented by the erroneous instructions in this case, Castano's substantial rights were not affected for purposes of plain error review. As explained above, a jury that found possession *on the facts of this case* would, if properly instructed, necessarily have found carrying as well. This statement simply could not have been made regarding the standards of participation in the four cases relied upon by Castano.