NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0135n.06

No. 17-3328

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 15, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| KRISTOPHER COURTNEY, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

Before: KEITH, KETHLEDGE, and DONALD, Circuit Judges.

KETHLEDGE, Circuit Judge. A federal jury convicted Kristopher Courtney of various gun and drug charges. On appeal, Courtney argues that the district court erred by denying his motion to suppress and that the government lacked sufficient evidence to prove him guilty. We reject his arguments and affirm.

I.

In August 2016, an informant told Cleveland Police Detective Robert McKay that Courtney was using an apartment on 130th Street to sell heroin. McKay checked property records and learned that Courtney had bought the apartment in 2012 and later sold it (along with ten other properties) to a company owned by his nephew.

McKay and other officers then began to surveil Courtney and—pursuant to a warrant—attached a GPS device to his pickup truck. They observed the following pattern: Courtney

arrived at the apartment each day around noon, unlocked the door, and went inside; and thereafter, throughout the day, people walked up to the apartment, went inside for a few minutes, and then left. On one occasion, Courtney walked out of the building and up to a car where he engaged in a hand-to-hand transaction with someone inside. In addition, half a dozen times a day, Courtney left the apartment and drove to houses throughout Cleveland. In doing so, he drove only on side streets, circled city blocks repeatedly, and travelled routes that took him miles out of his way. When he arrived at a house, Courtney parked his truck and went inside for a few minutes or exchanged small items with people outside.

Courtney typically stayed at the 130th Street apartment until around midnight, locked the apartment door as he left, and drove somewhere else to spend the night—usually a house on Shady Oak Boulevard, or another on Normandy Road. Detective McKay again checked property records and learned that the house on Shady Oak was owned by a woman with whom Courtney had lived in the past. Officers later searched the trash behind the house on Normandy, and found a bank statement addressed to Courtney.

Eighteen days after the informant's tip, McKay presented affidavits to an Ohio judge detailing information from the informant, the property records, the GPS findings, and the officers' own observations, among other things. The judge signed warrants to search three residences: the apartment on 130th and the houses on Shady Oak and Normandy. The next day McKay and other officers searched all three residences simultaneously.

In the apartment building, officers found 58 grams of heroin, 140 grams of cocaine, a 196-gram mixture of heroin and fentanyl, hundreds of plastic bags and rubber gloves, a loaded rifle, a digital scale with heroin residue, a pill bottle with Courtney's name on it, mail addressed to Courtney, and a loaded sawed-off shotgun. At the house on Shady Oak, officers found plastic

bags, rubber gloves, a device to compress powder into smaller sizes, another device to vacuum-seal bags, digital scales, and paperwork from the Cleveland Municipal Court with Courtney's name on it. At the house on Normandy, officers found a pistol and bank statements with Courtney's name on them.

As the searches began, officers pulled over Courtney's truck to the side of the road. A few minutes later, the government says, the officers at the apartment radioed the officers who had stopped Courtney and told them about the drugs and mail in the apartment. The officers then arrested Courtney, drove him to the apartment, and read him his *Miranda* rights. McKay later asked Courtney for the keys to the apartment, which Courtney said were in his truck.

An officer retrieved the keys and Detective McKay used them to lock the apartment. Officers later towed the truck per Cleveland police department policy. Over the next few days, Detective McKay got two more warrants: one to search the building's downstairs apartment, which was mostly empty, and another to search the truck, where officers found mail addressed to Courtney and to his nephew's company.

A federal grand jury later indicted Courtney on five counts: possession with intent to distribute heroin and fentanyl; possession with intent to distribute heroin; possession with intent to distribute cocaine; being a felon in possession of a firearm; and maintaining a drug-involved premises. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B), and (b)(1)(C); 18 U.S.C. § 922(g)(1); 21 U.S.C. § 856(a)(2).

Courtney thereafter moved to suppress the evidence found in the apartment building, at the houses, and in his truck. The district court held that the warrant affidavits established probable cause to search those places. The court also held that police had illegally seized Courtney when they first pulled over his truck, but that they gained probable cause to arrest him

five minutes later, when they learned that drugs and mail addressed to him had been found in the apartment. Hence the court denied the motion to suppress.

After a two-day trial, the jury convicted Courtney on all counts. He then filed a motion for judgment of acquittal or a new trial. The court denied his motion and later sentenced him to 140 months' imprisonment. This appeal followed.

II.

A.

Courtney challenges the district court's denial of his motion to suppress on three grounds that merit discussion here. We review de novo the court's denial of that motion. *See United States v. Hockenberry*, 730 F.3d 645, 657 (6th Cir. 2013).

First, Courtney argues that police lacked probable cause to search the apartment building, the houses, and his truck. Probable cause means a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (internal quotation marks omitted). Here, Detective McKay's affidavits recited that an informant had said Courtney sold heroin out of his apartment. The affidavits further recited what the officers themselves had seen: throughout the day Courtney typically let people into the apartment who stayed for only a few moments; outside the apartment, Courtney made a hand-to-hand exchange that looked like a drug sale; Courtney drove his truck from the apartment to numerous houses where he made similar hand-to-hand exchanges; and Courtney often circled the block to see if anyone was following him. That information established a fair probability that police would find drugs and evidence of drug trafficking in the apartment building and in Courtney's truck.

Detective McKay's affidavits also recited that, when Courtney left the apartment at night, he drove miles out of his way to lose anyone following him; that he spent most nights at the houses on Shady Oak or Normandy; that the Shady Oak house was owned by a woman with whom Courtney had lived in the past; and that officers had found Courtney's bank statement in the trash outside the Normandy house. That information established a fair probability that drugs and evidence of drug trafficking would likewise be found at the houses.

Yet Courtney contends that the affidavits failed to establish probable cause because the informant gave information based on hearsay rather than personal observation. But the Rules of Evidence hardly govern questions of probable cause. Detective McKay's affidavits recited that he had known the informant for 15 years, and that the informant had given information in the past that led police to execute search warrants and seize illegal drugs. To corroborate what the informant said, Detective McKay watched the apartment, followed Courtney, attached a GPS to Courtney's truck, and searched property records. Thus the district court did not err when it determined that the affidavits established probable cause based in part on what the informant had told Detective McKay. *See United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013).

Second, Courtney argues that police lacked probable cause to arrest him. Plainly they did have probable cause: by the time the officers formally placed Courtney under arrest, the officers searching the apartment had told them that drugs had been found there. At that time, therefore, a reasonable person would think that Courtney had committed a crime. *See United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006). Nor, contrary to Courtney's suggestion here, did the district court need to hold an evidentiary hearing to make that determination, since Courtney did not dispute in the district court that the arresting officers knew about the drugs in the apartment

when they formally arrested him. *See United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006).

Courtney's third argument rests on the premise—which the government does not dispute here—that the officers lacked probable cause when they seized Courtney in his truck as the searches began. And from that premise, Courtney seems to think, it follows that the district court should have granted his motion to suppress in full. Again he is mistaken. The illegal seizure lasted only five minutes (before the officers arrested him with probable cause), and the officers recovered no evidence as a result of it. Instead, the officers searched his truck pursuant to a lawful inventory search only after they lawfully arrested him. *See United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012).

Courtney's remaining arguments as to suppression are either not developed or likewise meritless. The district court correctly denied his motion to suppress.

B.

Courtney challenges the sufficiency of the evidence supporting his convictions. We ask only whether any rational jury "could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Castano*, 543 F.3d 826, 837 (6th Cir. 2008).

Specifically, Courtney argues that the government failed to prove at trial that he (rather than someone else) possessed the drugs and guns found in the apartment building. As repeatedly detailed above, however, the evidence at trial easily allowed the jury to find that Courtney had the power to "exercise dominion and control" over the drugs and guns. *See United States v. Hunter*, 558 F.3d 495, 504 (6th Cir. 2009). Hence this argument too is meritless.

The district court's judgment is affirmed.